## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**RICHARD J. SALAZAR**

      Plaintiff,

vs.

**WESTWOOD COLLEGE, INC.**, a corporation doing business in Colorado,

      Defendant.

_____

## COMPLAINT
_____

COMES NOW the Plaintiff, Richard J. Salazar, by and through his attorney, Ralph G.

Torres, and for a complaint against the Defendant alleges and avers the following:

### I. JURISDICTION

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4).  This is an

action authorized and instituted pursuant Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e *et.seq.* (hereinafter referred to as "Title VII") and 42 U.S.C. §1981.

2.      The unlawful employment practices alleged herein were committed within the

Judicial District of Colorado.

### II. PARTIES

3.      Plaintiff, Richard J. Salazar is a Hispanic male citizen of the United States and at

all times relevant hereto was a resident of the United States and the District of Colorado.  Mr.

Salazar worked for Defendant as a Enrollment Support Manager and various other positions from

October, 2008 to March 16, 2010.

4.      Defendant, Westwood College, Inc. is an employer pursuant to Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §1981.  At all times material hereto, Defendant has employed more than 15 employees.

5.      Rae Anne McNeally, Jessica Hensley, Jim Doris, David Harpool, Rachel Fazio and Scott Ferguson were caucasian males and/or females, during the relevant time period and management/supervisory officials of Defendant with the authority to recommend and/or hire and fire employees and impose terms and conditions of employment upon employees of the Defendant.

### III. ADMINISTRATIVE PROCEDURES

6.      On or about September 27, 2010, Plaintiff filed with the Equal Employment Opportunity Commission his complaint alleging discrimination on the basis of national origin, sex and retaliation when he was terminated from his position as March 16, 2010.

7.      Plaintiff timely filed his formal EEO charge on these allegations which EEOC accepted and designated as charge No. 541-2010-02467.

8.      On or about September 29, 2010, EEOC issued its Notice of Right to Sue on its own volition, which Plaintiff received on or about October 1, 2010.

9.      All conditions precedent to the commencement of this lawsuit have been complied with by Plaintiff.

### IV.  GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff is a Hispanic male who had been employed with Defendant as a Enrollment Support Manager and various other positions from October, 2008 to March 16, 2010.
.

11.     Angela Thompson was Plaintiff's supervisor from the time he was employed until Rae Anne McNeally became his supervisor in late February, 2010/ early March, 2010.

12.     When Ms. Thompson came to Westwood College, in approximately 2004, there was no diversity in the management and supervisory organizational structure.

13.     During Plaintiff's employment under Angela Thompson, he received excellent performance reviews, commendations from other employees for his management style and merit performance bonuses.  Ms. Thompson met with Plaintiff almost every week to review his performance and status of goals and achievements, as well as address any questions and concerns he had in performing his job at Westwood College.

14.     In September, 2009, Ms. Thompson assigned Plaintiff to taking over the School of Professional Studies (SPS) as an Enrollment Support Specialist (ESS) ) due to his excellent work performance and skill set needs.  Due to Plaintiffs' excellent leadership, the SPS group exceeded their goals in January, 2010.

15.     In October and November, 2009, Plaintiff had difficulty meeting and discussing the student enrollment agreements and discrepancies in tuition amounts and related incidents with Jessica Hensley (white female).  Ms. Hensley was unresponsive to his concerns and requests.

16.     In October, 2009 and November, 2009, during Plaintiff's meetings with Ms. Hensley, he was shunned, interrupted and ignored by David Harpool,  President of Westwood College Online, and Jim Dorris, white male, Director of the Business School.  Neither Mr. Harpool, nor Mr. Dorris would make eye contact with Plaintiff in the halls, acknowledge his greetings and were curt and rude to him.

17.     Mr. Harpool has a history of making derogatory comments and taking negative employment actions against Hispanic employees.  At his prior place of employment it was confirmed that he informed a supervisor of a Hispanic employee: Carlos Diaz - to "fire the fucking mexican."

18.     Plaintiff complained of the discriminatory treatment he believed he was being subjected to in October, 2009 to his supervisor, Angela Thompson.

19.     Ms. Thompson reported Plaintiff's treatment concerns to the Human Resources Director - Rachel Fazio, but an investigation was never completed, nor her concerns or Plaintiff's concerns addressed by Defendant.

20.     On information and belief, Ms. Henley, retaliated against Plaintiff when she learned of his complaints, by fabricating employee complaints of his performance to her supervisors, including Rachel Fazio.  Plaintiff was never advised of her complaints or allegations of his performance problems.

21.     On information and belief, in January, 2010, Rae Anne McNeally began spreading untruthful, derogatory and negative rumors about Plaintiff's alleged management style as being "intimidating" to her and other supervisory co-workers, including Rachel Fazio, in Human Resources.

22.     During this same time period, David Harpoole, began also reporting untruthful, derogatory and negative rumors about other co-workers and employees having problems with Plaintiff; and that he was being randomly "stopped in the hall" and told of problems with Plaintiff.

23.     None of the alleged performance problems, concerns, untruthful allegations or

4

derogatory accusations were ever brought to Plaintiff's attention.

24.     When Angela Thompson heard of the untruthful accusations against Plaintiff, she informed Defendant's Human Resources's department that Plaintiff was being "set up".

25.     In approximately June, 2009, Rae Anne McNeally, a white female, came to Westwood College without the necessary qualifications to perform her supervisory position as a Manager of Continuing Student Services.   On information and belief, Ms. McNeally does not possess a college degree.

26.     On or about September, 2009, Ms. McNeally was promoted into the position of Director of Student Experience, without the position even being posted for other applicants to apply.  This was done in violation of Defendant's policies and procedures.

27.     Even though Plaintiff's performance in the SPS excelled previous records for the group, Plaintiff was abruptly reassigned as the Tech School Manager and Jerry Pelley (white male) was reflected in an email as being the SPS Manager - not Plaintiff.   When Plaintiff asked Ms. Thompson why he was being moved, Ms. Thompson informed him that the decision was out of her hands.

28.     Plaintiff was informed on or about February, 2010 that the Defendant would be launching a new operating model and he would be reporting to Rae Anne McNeally instead of Ms. Thompson.

29.     Sometime in February, 2010, Ms. McNeally asked Defendant how he felt about the operating model change and what he had heard as feedback from his co-workers and direct reports.  Plaintiff was honest with Ms. McNeally and told her that many people had expressed concerns to him that the risk analysis and work breakdown structure was not properly addressing

all the people that were affected by the model change.

30.     Ms. McNeally became visibly hostile and upset with Plaintiff and demanded that he disclose the names of each individual that had expressed such concerns and did not support the new operating model.   Plaintiff refused to provide the names of the individuals to which Ms. McNeally threatened Plaintiff to the effect that "I will get that information out of you another way then".

31.     Plaintiff reported this confrontation with Ms. McNeally to Angela Thompson. Ms. Thompson reported the incident up her chain of command, which resulted in David Harpool and Rachel Fazio meeting with Plaintiff to recap the events.

32.     Plaintiff met with David Harpool and Rachel Fazio to explain the threats that he received from Ms. McNeally as well as complained about how he was being treated, the discriminatory environment he felt he was working in, how he didn't feel he would ever be able to succeed and be able to perform his job under a supervisor that threatens him, that he wouldn't be treated fairly and that this treatment was discriminatory to him.  He wanted these supervisors to do something to resolve his concerns and complaints.

33.     Plaintiff did not receive any information back from the supervisors to whom he had complained of his discriminatory treatment.  Instead he was placed under Ms. McNeally's supervision with his first day of official reporting as March 1, 2010.

34.     On or about March 3, 2010, Ms. McNeally instructed Plaintiff to follow her into Rachel Fazio's office for a meeting.  In that meeting, Ms. Fazio informed Plaintiff that she had received complaints against his leadership style and that she did not have time to investigate those complaints, due to a conference that was being held over the next few days.  She informed

Plaintiff that until she had time to investigate the complaints, he was being placed on administrative leave.

35.    Plaintiff again complained to Ms. Fazio and Ms. McNeally that he was being treated unfairly and differently, in that he had voiced complaints about Ms. McNeally's management and treatment of him, yet she was not being placed on administrative leave.

36.    On or about March 9, 2010, Plaintiff prepared a written narrative of his instances of disparate treatment and gave the same to Rachel Fazio.

37.    On or about March 12, 2010, Plaintiff met with Scott Ferguson, the Senior Director of Human Resources for Defendant, who advised Plaintiff that he was going to investigate his complaints.  Plaintiff told Mr. Ferguson during this interview/conversation, that he felt he was being targeted, discriminated and retaliated against by various individuals of Defendant.

38.    Mr. Ferguson did not take Plaintiff's complaints seriously, never completed the investigation, nor reported back to him any findings or efforts he had taken.

39.    On March 16, 2010, Plaintiff was offered a severance package or termination. Again, Defendant did not acknowledge Plaintiff's complaints of discriminatory treatment.

40.    On March 16, 2010, Plaintiff was terminated. Upon information and belief, Defendant hired a white male to replace Plaintiff's position.

41.    Plaintiff was never advised of job performance deficiencies during his employment with Defendant while under the supervision of Angela Thompson.

42.    The alleged job performance and management style problems that were reported against him by Ms. McNeally, Ms. Hensley, Mr. Harpool were never brought to his attention, so

that he could address the same, nor was he given the opportunity to improve his performance.

43.     No other non-Hispanic similarly situated employees of Defendant were not

subjected to the different standards of performance review, having the complaints and concerns

of discriminatory treatment be disregarded, nor were terminated as was Plaintiff.

V. FIRST CLAIM FOR RELIEF
**(Terms and Conditions of Employment - Title VII**
**National Origin and Gender)**

44.     Plaintiff hereby incorporates and realleges herein the allegations in the preceding

paragraphs.

45.     The conduct of Defendant's supervisors and co-workers as alleged in the above

paragraphs all violate Plaintiff's rights as guaranteed rights as guaranteed by Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et.seq.*

46.     Similarly situated employees who are not Hispanic and not male, like Plaintiff

have not been similarly treated.

47.     The conduct of the Defendant, its supervisors/managers and co-workers as above

alleged, has been attended by circumstances of malice and wanton and reckless disregard for the

rights and feelings of Plaintiff.

48.     As a result of the conduct of the Defendant and its agents as above-described,

Plaintiff has been damaged in an amount to be determined at trial, including loss of wages,

diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss

of benefits, loss of opportunity for professional growth and for pain, suffering, emotional distress

and punitive damages.

49.     Plaintiff claims reasonable attorney's fees pursuant to Title VII in an amount to be

determined at trial.  Further, Plaintiff requests injunctive and declaratory relief, and compensatory and punitive damages for the discrimination complained of.

## VI. SECOND CLAIM FOR RELIEF
### (Title VII - Retaliation)

50.     Plaintiff hereby incorporates and realleges herein the allegations in the preceding paragraphs.

51.     The conduct of Defendant and/or its managers and supervisors as above alleged were (including but not limited to) in retaliation for him complaining of his discriminatory treatment, refusing to provide names of individuals who complained to him about the operating model and structure, requesting an investigation be completed, placing him on administrative leave and terminating him - all deny Plaintiff equal terms and conditions of employment and violates Plaintiff's rights as guaranteed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et.seq.* and were due to his national origin - Hispanic and sex.

52.     The conduct acts and omissions of Defendant and/or its supervisors/managers and co-workers, were intentional, and deprived Plaintiff of his right to be free from retaliation and different terms and conditions of employment.

53.     As a result of the conduct of the Defendant and its agents as above-described, Plaintiff has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of opportunity for professional growth and for pain, suffering, emotional distress and punitive damages.

54.     Plaintiff claims reasonable attorney's fees pursuant to Title VII in an amount to be determined at trial.  Further, Plaintiff requests injunctive and declaratory relief, and

compensatory and punitive damages for the discrimination complained of.

## VII. THIRD CLAIM FOR RELIEF
### (Race/National Origin (Hispanic),
### Terms and Conditions of Employment- 42 U.S.C. § 1981)

55.     Plaintiff hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

56.     Plaintiff was an at-will employee of Defendant.

57.     Plaintiff was subjected to different terms and conditions of employment from his similarly situated co-workers due to his race/national origin (Hispanic).

58.     The conduct acts and omissions of Defendant and/or its supervisors/managers and co-workers, were intentional, and deprived Plaintiff of his right to be free from different terms and conditions of employment.   Defendant and its supervisors and co-workers denied Plaintiff the benefits of employment with Defendant when they (not limited to) ignored him, fabricated false and untruthful job performance and management style complaints, threatened him to disclose names of co-workers, failed to counsel and notify him of any alleged job performance deficiencies and permitting him the opportunity to correct and improve the same and placed him on administrative leave due to not having the time to follow the policies and procedures of investigating, and terminating him because of his race/national origin - Hispanic, as guaranteed by 42 U.S.C. § 1981.

59.     Similarly situated, non-Hispanic employees were not treated the same as Plaintiff.

60.     The conduct of the Defendant and/or its supervisors/managers and co-workers as above alleged, has been attended by circumstances of malice and wanton and reckless disregard for the rights and feelings of the Plaintiff.

**10**

61.     As a result of the conduct of Defendant and/or its supervisors as above alleged, Plaintiff has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, loss of benefits (including retirement) loss of opportunity for professional growth and for pain and suffering and emotional distress.

62.     Additionally, Plaintiff claims punitive damages in an amount to be determined at trial.

63.     Plaintiff claims reasonable attorney fees in an amount to be determined at trial. Further Plaintiff requests injunctive and declaratory relief, compensatory damages, reinstatement and backpay with full benefits as of the date of her termination.

## VIII. FOURTH CLAIM FOR RELIEF
### (Retaliation - Race/National Origin (Hispanic) pursuant to 42 U.S.C. § 1981)

64.     Plaintiff hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

65.     The conduct of Defendant and/or its managers and supervisors as above alleged were in retaliation for him complaining of his discriminatory treatment, refusing to provide names of individuals who complained to him about the operating model and structure, requesting an investigation be completed - all violate Plaintiff's rights as guaranteed by 42 U.S.C. § 1981 and were due to his race/national origin - Hispanic.

66.     The conduct acts and omissions of Defendant and/or its supervisors/managers and co-workers, were intentional, and deprived Plaintiff of his right to be free from retaliation and different terms and conditions of employment.

67.     Defendant and/or its supervisors denied Plaintiff the benefits of employment with Defendant after he complained, placed him on administrative leave and then terminated him, due

**11**

to his race/national origin - Hispanic, as guaranteed by 42 U.S.C. § 1981.

68.     Similarly situated, non-Hispanic employees were not treated the same as Plaintiff.

69.     The conduct of the Defendant and/or their supervisors/managers and co-workers as above alleged, has been attended by circumstances of malice and wanton and reckless disregard for the rights and feelings of the Plaintiff.

70.     As a result of the conduct of Defendant and/or their supervisors as above alleged, Plaintiff has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, loss of benefits (including retirement) loss of opportunity for professional growth and for pain and suffering and emotional distress.

71.     Additionally, Plaintiff claims punitive damages in an amount to be determined at trial.

72.     Plaintiff claims reasonable attorney fees in an amount to be determined at trial. Further Plaintiff requests injunctive and declaratory relief, compensatory damages, reinstatement and backpay with full benefits as of the date of his termination.

WHEREFORE, Plaintiff prays that this Court enter an Order as follows:

A.     Grant a permanent injunction prohibiting Defendant from engaging in any employment practices which are discriminatory under Title VII and 42 U.S.C. § 1981;

B.     Reinstate to Plaintiff all benefits which were lost as a result of the discriminatory acts directed at him.

C.     Reinstate Plaintiff in a position aligning with his professional and educational expertise at a grade and pay level to which he would have attained had he not been terminated.

D.     Reimburse Plaintiff for all reasonable and necessary expenses incurred due to the

discriminatory actions of Defendant.

     E.       Award Plaintiff compensatory, punitive and other damages against Defendant in an

amount to be determined at trial;

     F.       Award Plaintiff his costs of this action and reasonable attorney's fees;

     G.       Retain jurisdiction over this action to insure full compliance with the Orders of this

Court; and

     H.       Grant Plaintiff such other and further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

    DATED this 29th day of December,  2010.


                      LAW OFFICE OF RALPH G. TORRES


                      _/s Ralph G. Torres_____
                      Ralph G. Torres
                      1801 Broadway, Suite 1100
                      Denver, Colorado 80202
                      Phone: (303) 297-8427; Fax: 303-292-2661
                      **Attorney for Plaintiff**


Plaintiff's Address:

c/o Law Office of Ralph G. Torres

**13**